OPINION
{¶ 1} Defendant-appellant Charles Franks appeals from the February 26, 2004, Judgment Entry of the Stark County Court of Common Pleas revoking defendantappellant's community control and imposing a prison sentence on appellant. Plaintiffappellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On December 23, 1999, the Stark County Grand Jury indicted appellant on one count of gross sexual imposition in violation of R.C. 2907.05, a felony of the third degree. At his arraignment on January 7, 1999, appellant entered a plea of not guilty to the charge.
 {¶ 3} Subsequently, on March 6, 2000, appellant pled guilty to the charge of gross sexual imposition. In May of 2000, the trial court sentenced appellant to five years community control and classified appellant as a sexually oriented offender.
 {¶ 4} On March 6, 2002, appellant's Probation Officer filed a Motion to Revoke Probation, alleging that appellant had violated the terms and conditions of his probation by failing to obtain employment as ordered by his Probation Officer and failing to complete sex offender treatment. At the April 1, 2002, hearing on such motion, appellant stipulated as to probable cause. As memorialized in a Judgment Entry filed on April 10, 2002, the trial court revoked appellant's community control and sentenced appellant to four years in prison.
 {¶ 5} After appellant, on October 10, 2002, filed a Motion for Judicial Release, the trial court, pursuant to a Judgment Entry filed on December 2, 2002,[1] suspended the balance of appellant's prison sentence and placed appellant on community control for a period of three years under specified terms and conditions. The trial court, in its entry, stated, in relevant part, as follows:
 {¶ 6} "11. The defendant must follow the instructions of the Probation Officer and must comply with all special conditions of probation.
 {¶ 7} "Any special conditions made by the Probation Department or by one of its Probation Officers or by the court becomes a part of the RULES OF COMMUNITY CONTROL. The special conditions in this case are:
 {¶ 8} "12. That this defendant is released into the custody of the Intensive Supervision Probation Program and the defendant shall comply with the Intensive Supervision Probation Program as directed by his probation officer. Upon successful completion of the defendant's Intensive Supervision Probation Period, the defendant's probation will be transferred to the Ohio State Adult Probation Authority for the remainder of defendant's probationary period. . . .
 {¶ 9} "14. That this defendant shall enter and complete a sex offender treatment program beginning no later that [sic] December 2, 2002."
 {¶ 10} Previously, on November 15, 2002, appellant had signed a document captioned "Journal Entry Defendant Placed on Probation." Such document, which was never filed or signed by the Judge, contained the following rules of probation:
 {¶ 11} "17. The defendant shall be enrolled in a sex offender program by 12-2-02.
 {¶ 12} "19. The defendant shall obtain and maintain full-time, verifiable employment. If not employed 35 to 40 hours per week, then supplement with 400 hours of community service."
 {¶ 13} Appellant, by signing such document, agreed that he understood the Rules of Probation and that he would be "immediately imprisoned" if he did not live up to them.
 {¶ 14} On February 6, 2004, appellant's Probation Officer filed a Motion to Revoke Probation, alleging as follows:
 {¶ 15} "Defendant has violated Rule No. 11: Defendant has failed to obtain and maintain gainful employment and if not employed he is to complete community service work. Defendant has failed to comply with community service and/or obtain employment."
 {¶ 16} Three days later, on February 9, 2004, another Motion to Revoke Probation was filed, alleging that appellant had violated the terms and conditions of his community control by failing to "cooperate/progress in Sex Offender Treatment with Summit Psychological Associates, Inc." A hearing on the motions was held on February 23, 2004. The following evidence was adduced at the hearing.
 {¶ 17} Linda Monter, a senior Probation Officer with the Intensive Supervision Program, testified that appellant has been consistently under her supervision since May of 2000. Monter testified that, pursuant to the November 19, 2002,[2] Judgment Entry granting his Motion for Judicial Release, appellant was ordered to comply with the Intensive Supervision Program and follow all instructions of his Probation Officer and to enter and complete a sex offender program beginning no later than December 2, 2002. Monter testified that she served the Judgment Entry on appellant and reviewed the conditions contained in the same with him and that appellant indicated that he understood. Monter noted that appellant had signed "the preliminary entry that our office does complete while we're waiting on this entry on November 15, '02." . . .[3] Transcript at 13.
 {¶ 18} When asked, Monter indicated that appellant had failed to comply with the terms and conditions. The following is an excerpt from the February 23, 2004, hearing:
 {¶ 19} "Q. Okay. Can you tell us which he has violated?
 {¶ 20} "A. Special condition No. 11 is, um, I ordered him to be involved in community service due to the fact he has not obtained gainful employment. Uh, it's a policy of the ISP [Intensive Supervision] program that if somebody does not get a job to keep them busy and keep them out of trouble is to order them to do community service. And I set it up for four days a week based on the fact that on one day of that week he attended sex offender counseling. So I advised him that every day except Thursdays he was to attend community service with the Stark County Day Reporting Program. And on Thursday mornings I expected him to go look for a job and show proof that he was looking for a job.
 {¶ 21} Monter testified that she asked appellant to obtain full-time employment, that he did not do so, and that, due to the fact that appellant was unable to find a job, "we decided to set him up in community service to keep him busy and out of trouble." Transcript at 34. According to Monter, appellant failed to comply.
 {¶ 22} At the hearing, Monter further testified that appellant violated rule No. 14, which required him to participate and successfully complete a sex offender program. Monter noted that she had received a letter dated February 9, 2003, from Summit Psychological advising her that appellant had not been complying with treatment.
 {¶ 23} At the hearing, Jeffrey O'Neill, a psychology intern at Summit Psychological Associates, testified that he was appellant's co-therapist in his group sex offender treatment program and that appellant was terminated from their program in April of 2003 due to unexcused absences from the weekly sessions. O'Neill further testified that appellant was allowed to re-enter the program. According to O'Neill, appellant, as part of the treatment program, signed a sex offender contract agreeing, in part, to maintain employment. Appellant, O'Neill testified "has not maintained any employment since being reentered into the group last year." Transcript at 46. O'Neill further testified that appellant had violated the contract since his participation in the treatment was poor, and that appellant had missed three of the weekly sessions since reentering the program in April of 2003.
 {¶ 24} The last witness to testify at the hearing was Rebecca Haymond, a community service officer for the Day Reporting Program at the Stark County Court of Common Pleas. Haymond testified that appellant was sent to her in October of 2002 to complete 400 hours of community service and that appellant completed his initial 400 hours. According to Haymond, appellant, upon instruction from his Probation Officer, was to continue performing community service at Goodwill Industries at the rate of four days a week for eight hour shifts until he obtained a full-time job. When asked whether appellant had done so, Haymond responded that appellant "did his four days a week two times out of the thirteen weeks that he was there." Transcript at 62. Haymond further testified that she notified appellant's Probation Officer six times starting on November 8, 2003, that appellant was not complying. The following is an excerpt from Haymond's testimony:
 {¶ 25} "Q. Following your last report to the probation officer, I think you said it was December 27 of '03, that he was not complying was he to continue with you?
 {¶ 26} "A. Correct.
 {¶ 27} "Q. Okay. And, and he did not?
 {¶ 28} "A. No.
 {¶ 29} "Q. Okay.
 {¶ 30} "A. He was to continue performing community service hours and he did not.
 {¶ 31} "Q. In the manner that you've already described?
 {¶ 32} "A. Yes.
 {¶ 33} "Q. The four days a week?
 {¶ 34} "A. Uh-huh.
 {¶ 35} "Q. Okay." Transcript at 63-64. According to Haymond, appellant failed to report back to Goodwill Industries after December 27, 2003.
 {¶ 36} At the conclusion of the hearing, the trial court, pursuant to a Journal Entry filed on February 23, 2004, revoked appellant's community control and reinstated appellant's four year prison sentence.
 {¶ 37} Appellant now raises the following assignment of error on appeal:
 {¶ 38} "The trial court erred when it revoked appellant's community control and imposed a prison term because appellant did not violate the terms of his probation."
 I {¶ 39} Appellant, in his sole assignment of error, argues that the trial court erred in revoking appellant's community control and imposing a prison sentence on appellant since appellant did not violate the terms and conditions of his community control. We disagree.
 {¶ 40} The decision whether to revoke an offender's probation or community control sanction is left to the sound discretion of the trial court, and absent an abuse of that discretion, the decision of the trial court will not be reversed. State v. McKnight (1983), 10 Ohio App.3d 312,313, 462 N.E.2d 441. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Rivera (1994),99 Ohio App.3d 325, 328, 650 N.E.2d 906. Because a revocation hearing is not a criminal trial, the State only has to introduce evidence showing that it was more probable than not that the person on probation or community control violated the terms or conditions of the same. See Statev. Stockdale (Sept. 26, 1997), Lake App. No. 96-L-172, 1997 WL 663688.
 {¶ 41} In the case sub judice, appellant, pursuant to a Judgment Entry filed on December 2, 2002, was ordered to follow the instructions of his Probation Officer and comply with all special terms of probation and to "comply with the Intensive Supervision Program as directed by his probation officer." Linda Monter, appellant's Intensive Supervision Probation Officer, testified that one of the conditions was that appellant obtain verifiable full-time employment. Monter testified that she reviewed such conditions with appellant, that appellant indicated that he understood the same, and that appellant signed a document on November 15, 2002, agreeing to such term.[4] Testimony was adduced at the February 23, 2004, hearing that appellant did not obtain full-time employment and had not been employed since November of 2002.
 {¶ 42} Monter further testified that she ordered appellant, who had performed his initial 400 hours of community service, to continue performing community service until he was fully employed. Monter testified that appellant was ordered to perform community service four days a week for eight hours a day, but failed to do so. Testimony was adduced that appellant failed to report for community service as directed and was terminated from Goodwill Industries. In short, there was testimony that appellant failed to follow the verbal and written orders of his probation officer as directed by the trial court.
 {¶ 43} Finally, as memorialized in the December 2, 2002, Judgment Entry, appellant, as a condition of community control, was ordered to "enter and complete a sex offender treatment program beginning no later that (sic) December 2, 2002." At the February, 2004, hearing, testimony was adduced that appellant was to attend weekly group therapy at Summit Psychological Associates and that appellant was terminated from the program in April of 2003 due to unexcused absences. Appellant was permitted to re-enter the program and, in September of 2003, signed a "sexual offender treatment contract" pursuant to which appellant agreed to "maintain employment at all times while I am in the program . . ." As is stated above, appellant failed to do so.
 {¶ 44} Based on the foregoing, we find that the trial court did not err in revoking appellant's community control and reinstating appellant's prison sentence and the trial court's decision was not arbitrary, unconscionable or unreasonable.
 {¶ 45} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 46} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] The original Judgment Entry was filed on November 19, 2002. The December 2, 2002, Judgment Entry was a Nunc Pro Tunc Entry.
[2] A Nunc Pro Tunc Judgment Entry was filed on December 2, 2002.
[3] As is stated above, such document was captioned "Journal Entry Defendant Placed on Probation."
[4] Such document was admitted at the February 23, 2004, hearing.